# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

J.B. NOTTINGHAM, INC.,

      Plaintiff,

v.

COOPER CROUSE-HINDS, LLC and
JO-KELL, INC.,

      Defendants.

_____/

Case No. 24-CV-02232-JSS-DCI

**JURY TRIAL DEMANDED**

**SECOND AMENDED COMPLAINT FOR FEDERAL TRADEMARK
INFRINGEMENT, COUNTERFEITING, FEDERAL UNFAIR COMPETITION, AND
COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiff J.B. Nottingham Inc. ("Plaintiff"), through undersigned counsel, hereby sues

Cooper Crouse-Hinds, LLC ("CCH") and Jo-Kell Inc. ("JK") (CCH and JK are jointly referred to

as "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for trademark infringement, trademark counterfeiting and unfair

competition arising from CCH and JK's unauthorized and infringing use of Plaintiff's DURALINE

trademark. Defendants have been using Plaintiff's DURALINE trademark without authorization,

to create the false impression that relevant consumers are purchasing Plaintiff's genuine electrical

connector products sold under the brand DURALINE. Defendants' unlawful conduct must be

enjoined.

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction over Plaintiff's claims for federal trademark

infringement and counterfeiting and federal unfair competition under 28 U.S.C. §§ 1331 and

1338(a) and 15 U.S.C. § 1121 because the claims arise under the Trademark Laws of the United

154812809.1

States, 15 U.S.C. §§ 1051 *et seq.* Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's claims for common law trademark infringement and unfair competition as such claims are so related to the federal trademark claims as to form the same case and controversy.

3.    This Court has personal jurisdiction over Defendants because Defendants maintain business locations within the State of Florida and/or have purposefully availed themselves to the State of Florida by conducting substantial business in the State of Florida, including supplying products and services to distributors and consumers within the State of Florida.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Plaintiff's business is located in the District, Plaintiff is suffering harm in this District due to Defendants' infringing activity, a substantial part of the events and property giving rise to this action are situated in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL COUNTS

5.    Plaintiff J.B. Nottingham & Co. Inc. is a Florida corporation, which was originally formed as a New York corporation that was domesticated in Florida on July 18, 2014 in Florida, and it maintains a business address at 1731 Patterson Ave., Deland, Florida, 32724 (hereinafter "Plaintiff").

6.    Plaintiff does business using the trade name and trademark "DURALINE".

7.    Plaintiff is the successor in interest to J.B. NOTTINGHAM & Co. Inc., a New York, corporation formed in April 24, 1946, (hereinafter referred to as "JBN-NY").

8.    JBN-NY commenced use of the trademark DURALINE in United States commerce since at least as early as 1961 and long before Defendants' uses complained of herein.

9.    JBN-NY filed a federal trademark application with the U.S. Patent & Trademark Office (USPTO) for the mark DURALINE on December 1, 1981.

2

10.     The application for the DURALINE mark matured into U.S. Trademark Registration No. 1215635 ("the '635 registration) on November 9, 1982 and has been continuously renewed since then.

11.     The '635 registration for the DURALINE mark covers "Electrical Plugs, Receptacles, Panels and Blocks."

12.     The '635 registration is valid and incontestable.

13.     JBN-NY was sold to its current owner, Mr. John Sclafani in August of 2012.

14.     Mr. Sclafani moved his DURALINE business to Florida, registered JBN-NY with the Secretary of State in Florida, and continued commercializing the DURALINE brand.

15.     In 2014, Mr. Sclafani formed Plaintiff J.B. Nottingham & Co., Inc., d/b/a Duraline, as a Florida corporation and Plaintiff has continued commercializing its DURALINE brand to the current day to identify the source of its electrical products.

**THE DEFENDANTS**

16.     Defendant Cooper Crouse-Hinds, LLC is a Delaware legal entity owned by Eaton Corporation, plc, an Ireland-based multinational manufacturer of electrical equipment with a multitude of affiliated entities operating in the United States, including Eaton Corporation, a business located at 1000 Eaton Blvd, Cleveland, OH 44122. Eaton Corporation, plc refers to Eaton Corporation, as having a "General Corporate administrative" function and refers to Cooper Crouse-Hinds, LLC as having an "Operations" function (hereinafter Defendant Cooper Crouse-Hinds, LLC is referred to as "CCH" and Eaton Corporation, plc is referred to as "EC-Ireland").

17.     Defendant CCH was acquired by EC-Ireland in 2012.

18.     Defendant CCH, EC-Ireland, and their affiliated companies have had number of predecessor-in-interest and successor-in-interest companies that have manufactured and distributed electrical connectors over the last 50 years, including companies that have been

3

identified in the trade by various trade names over time, such as Cooper Crouse-Hinds, Cooper Industries/Crouse-Hinds Molded Products, Crouse-Hinds by Eaton, and Eaton's Crouse-Hinds. The term "CCH" as used herein includes the relevant affiliate, predecessor, and/or successor entities involved in the acts and events discussed herein.

19.    Defendant Jo-Kell Inc. is a distributor of electrical products with its business headquarters located at 628 Innovation Dr. Chesapeake, VA 23320, and Jo-Kell has distribution facilities coast to coast (hereinafter Jo-Kell, Inc. is referred to as "JK").

## THE ELECTRICAL CONNECTORS

20.    One of Plaintiff's most successfully commercialized electrical products is a single pole high amperage, shore power connector.

21.    Shore power or shore-line electrical power assemblies are connectors used for ship-to-shore electrical power.

22.    Ships that dock into port require land-based electrical power to run the ship's electrical systems when the onboard electrical generation systems are powered down in port.

23.    Heavy duty electrical power cables and electrical plugs and connectors join the electrical systems of the ships in port and the dock's electrical system.

24.    Plaintiff presently sells its DURALINE brand, heavy-duty electrical plugs and connecters both directly to its customers, and through its distributor JK.

25.    The products are made with precious and semi-precious metals such as (silver, brass, copper).

26.    Tight manufacturing tolerances for Plaintiff's DURALINE product parts are essential to create the most surface contact possible between the parts for superior electrical conductivity.

27.    Plaintiff's parts are made in the United States at Plaintiff's factory in Florida.

28.     Plaintiff's DURALINE brand connectors are sold throughout the United States and used in military shipyards coast-to-coast including Joint Base Pearl Harbor-Hickam, located in Hawaii.

29.     Non-military shipyards also rely on Plaintiff's DURALINE brand electrical connectors for ship to shore power.

30.     The United States Navy is the single largest customer of Plaintiff's DURALINE connectors.

31.     A typical Navy war ship may use between 200-350 DURALINE connectors when operating on ship to shore dock power.

32.     Due to the marine environment and heavy electrical loads and frequent connecting and disconnecting of shore-line electrical products, wear and tear of the connectors is common in the industry, resulting in weakened conductivity and need for repeat orders for the connectors.

33.     The high quality of Plaintiff's DURALINE brand connectors has earned its recognition by the United States Department Of The Navy as a gold-standard in the industry.

34.     The Navy has named the DURALINE brand and promulgated written requirements for open contract bids with the requirement that bidders for supply contracts for similar ship-to-shore electrical connectors meet or exceed the proven quality of the DURALINE branded product. See Exhibit A attached.

35.     In certain cases, the Navy has used appropriate procedures to single-source Plaintiff's DURALINE electrical connectors.

## HISTORY BETWEEN THE PARTIES

36.     At least as early as January of 1991, Plaintiff's predecessor-in-interest JBN-NY entered into a private labeling distributor agreement with one of CCH's predecessor entities, Cooper Industries, Crouse-Hinds Molded Products, for the manufacture of electrical connectors

exclusively for JBN-NY's sole use, to sell electrical connectors under JBN-NY's registered DURALINE brand.

37.     When connectors were manufactured by CCH, the DURALINE brand and Central Islip NY Factory address were embossed into the rubber mold sleeve which covered the electrical connector.

38.     JBN-NY and CCH maintained a mutually satisfactory business relationship up until 2008 when after prior attempts to negotiate a written agreement failed and CCH made an overture to acquire JBN-NY.

39.     In July of 2008, as part of the acquisition negotiations, CCH requested, and JBN-NY provided its confidential customer list to CCH.

40.     Sometime thereafter CCH broke off discussions about possible acquisition.

41.     JBN-NY and CCH terminated their business relationship in 2009.

42.     After 2009, JBN-NY manufactured all of its own electrical connector products in-house and no longer outsourced the manufacturing of its DURALINE branded products from CCH.

43.     JBN-NY did not outsource the manufacturing of its DURALINE branded products to any third party after the business relationship with CCH ended.

44.     Defendant JK has been a longtime distributor of electrical products for Plaintiff and for at least the last three decades has been acting as JBN-NY's and then Plaintiff's exclusive distributor, limited to the Commonwealth of Virginia, and was an authorized seller of Plaintiff's DURALINE brand of electrical products in Virginia.

45.     Defendant JK and Plaintiff did not have a written manufacturer-distributor agreement.

46.    Since 2012 Plaintiff has been manufacturing its DURALINE brand electrical products in Deland, Florida. Prior to manufacturing its products in Florida, Plaintiff's predecessor JBN-NY manufactured its own DURALINE products in Islandia New York also known as Central Islip.

47.    Plaintiff has regularly over the last ten years taken orders from JK and shipped genuine DURALINE products from Florida to JK for fulfilling orders from Virginia-based customers.

48.    Plaintiff does not license or authorize any entity to manufacture products labeled or marked with the DURALINE brand.

## THE COUNTERFEITING ACTIVITY

49.    On October 29, 30, and 31, 2024, the Plaintiff's president, Mr. Sclafani, visited customers in Virginia and discovered that counterfeit DURALINE brand electrical connectors were actively being used at the shipping docks in Virginia.  An image of the counterfeit product appears below.



50.  Mr. Sclafani viewed hundreds of the counterfeit connectors in use during his visit to Virginia.

51.  Counterfeit electrical connectors also have been found at other locations in the United States. For example, the image below is of a counterfeit connector used at Joint Base Pearl Harbor-Hickam located in Hawaii. As shown in the second image below, this counterfeit connector appears to be marked with the year "2014."





8

52.    The counterfeit electrical connectors shown above include the embossed molded sleeve with the mark DURALINE in large letters.

53.    The counterfeit electrical connector sleeves shown above includes the wording "Central Islip, NY." below the mark DURALINE molded into the sleeve.

54.    Central Islip, New York, was the location of Plaintiff's predecessor JBN-NY.

55.    The Central Islip facility was closed back in 2011, and no connectors manufactured by or for Plaintiff have been marked "Central Islip" since at least 2011.

56.    As noted and shown in the images above, however, some the counterfeit connectors stamped DURALINE and "Central Islip, NY." appear to have been marked with the year "2014," which is after the Central Islip facility closed in 2011 and after the relationship between Plaintiff's predecessor JBN-NY and CCH ended in 2009.

57.    On information and belief, a typical production run of such connections is in the range of between 500-700.

58.    The ship-to-shore electrical connectors generally do not last more than 6-8 months in service on average and are typically replaced about twice a year depending shipyard and dock activity.

59.    On information and belief, the counterfeit products pictured on the previous pages showing the markings "DURALINE" and "Central Islip, NY.," were sold and/or put into use approximately within the last year.

60.    Tooling and dies for manufacturing typical rubber molded sleeves as used as part of the Plaintiff's DURALINE brand connectors typically last a few years and then have to be remade.

61.     After Plaintiff commenced manufacturing its DURALINE brand electrical connectors in Florida, Plaintiff no longer used the words "Central Islip, NY" on its products and instead used and continues to use the marking "Deland, FL," under the DURALINE trademark marking as pictured below:



62.     On information and belief, the counterfeit products showing unauthorized uses of the mark DURALINE were manufactured by or at the direction of Defendant CCH or one of its affiliates, parents, or subsidiaries.

63.     On information and belief, CCH sources components for its electrical connectors from a company with the name INAC Brass PVT. LTD., located in Gujarat, India.

64.     On information, Defendant JK has been selling counterfeit products bearing the trademark DURALINE which were not made in the United States, and were obtained from Defendant CCH, while at the same time Defendant JK has been ordering and selling Plaintiff's genuine DURALINE branded products made in the U.S., providing the appearance that all the connectors sold by JK are genuine when in fact they are not.

65.     On information and belief, Defendant JK has knowingly been deceiving the Plaintiff and Plaintiff's United States Navy customers and non-military customers, by selling

counterfeit products bearing the DURALINE brand made by CCH and without Plaintiff's authorization and in direct competition with Plaintiff.

66.    On information and belief, Defendant JK has been purchasing counterfeit DURALINE branded products manufactured by or sourced by CCH and knowingly selling them representing that the counterfeit DURALINE connectors are genuine ones manufactured by Plaintiff.

67.    Plaintiff is currently unaware of the length of time that counterfeit DURALINE products have been sold in Virginia, Hawaii, or elsewhere in the United States by the Defendants.

68.    Shortly after becoming aware of the allegations in Plaintiff's Original Complaint, Defendants changed the identifying SKU prefixes previously used to sell DURALINE connectors from an "E" prefix to a "CH" prefix maintaining the same serial numbers for competing connectors.

**COUNT I**

**FEDERAL TRADEMARK**
**INFRINGEMENT IN VIOLATION OF 15 U.S.C. §1114**

69.    Plaintiff repeats and incorporates each and every allegation in paragraphs 1 through 68 as if fully stated herein.

70.    Plaintiff is the owner of longstanding common law and federal trademarks rights in the mark DURALINE based on its longstanding use of the DURALINE brand as its trade name and as a brand to identify Plaintiff's electrical products.

71.    Plaintiff is the owner of two United States trademark registrations under numbers 1215635 and 1218983, each covering electrical products.

11

72.      Plaintiff's U.S. Reg. No. 1215635 issued on December 7, 1982, and covers goods described as "Electrical Plugs, Receptacles, Panels and Blocks. (hereinafter referred to as "the 635 registration).

73.      A copy of the '635 registration and current status as maintained in the records of the U.S. Patent & Trademark Office (USPTO) are attached at Exhibit B.

74.      The '635 registration has been in force for more than forty (40) years and became incontestable on October 6, 1988, pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065).

75.      The '635 registration has been timely renewed and is currently valid and subsisting on the Principal Register of the U.S. Patent & Trademark Office (USPTO).

76.      Plaintiff's U.S. Reg. No. 1218983 issued on November 9, 1982, and covers goods described as "Electric Arc Welding Controls and Power Supplies-Namely, Single and Multiple Operator Electric Arc Welding Controls, Distribution panels for Multiple Operator Electric Arc Welding Controls, and D.C. Transformer and Rectifier Power Supplies for Electric Arc Welders" (hereinafter referred to as "the 983 registration).

77.      The '983 registration has been in force for more than forty (40) years and became incontestable on September 3, 1992, pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065).

78.      The '983 registration has been timely renewed and is currently valid and subsisting on the Principal Register of the USPTO. A copy of the '983 registration and current status as maintained in the USPTO records is attached as Exhibit C.

79.      The Defendants, without authorization from Plaintiff, have been manufacturing and/or selling electrical connectors and components using the brand name DURALINE.

80. The Defendants uses of the DURALINE mark are subsequent in time to the common law and federally registered rights owned by Plaintiff for the mark DURALINE, hence Plaintiff has priority of right.

81. Defendants have been manufacturing and/or selling electrical connectors and components using the brand name DURALINE for products designed for use in connection with ship to shore electrical power and for customers that purchase ship to shore electrical power goods, including but not limited to the United States Navy, non-military shipyard and ship dock operators.

82. Defendants' unauthorized use of the DURALINE mark is identical and/or confusingly similar to Plaintiff's registered DURALINE mark.

83. The customers of Defendants' DURALINE branded products are the same as the customers of Plaintiff's DURALINE branded products.

84. The Defendants' unauthorized use of identical mark, DURALINE, on and in connection with the Defendants' manufacturing and selling the same and/or similar electrical connectors and components in United States commerce is likely to cause confusion or mistake in the minds of the relevant consumers, including but not limited to the United States Navy, and owners and operators of non-military shipyards and ship docks.

85. The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the source, sponsorship or affiliation between the Defendants and the Plaintiff and Plaintiff's DURALINE trademark.

86. The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

87.    The Defendants' uses in commerce of the infringing DURALINE brand on and in connection with the same or similar electrical goods sold by Plaintiff has resulted in lost profits and damages to Plaintiff's business which are difficult to determine.

88.    The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff and the goodwill and reputation of the DURALINE brand.  Moreover, it will continue to cause damage to Plaintiff and confuse the public unless enjoined by this Court.

## COUNT II

### FEDERAL TRADEMARK
### COUNTERFEITING  IN VIOLATION OF 15 U.S.C. §1114

89.    Plaintiff repeats and incorporates each and every allegation in paragraphs 1 through 88, as if fully stated herein.

90.    The Defendants actions as complained of above amount to trademark counterfeiting inasmuch the Defendants, without authorization from Plaintiff, have used in commerce, spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's DURALINE trademark, and Defendants have affixed the identical mark on identical goods covered by the Plaintiff's '635 registration and have been selling the goods to Plaintiff's customers including The United States Navy, non-military shipyard and ship dock operators, and to consumers of ship to shore electrical power connectors.

91.    On information and belief, Defendant JK's actions include ordering and selling genuine DURALINE brand electrical connectors manufactured by the Plaintiff and at the same time Defendant JK has been selling non-genuine counterfeit electrical connectors manufactured by CCH.

92.     The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the source, sponsorship or affiliation between the Defendants and the Plaintiff and Plaintiff's DURALINE trademark.

93.     The Defendants' actions as complained of herein constitute the use of a counterfeit mark(s) as defined in 15 U.S.C. § 1116(d)(1)(B).

94.     The Defendants' use in commerce of the infringing DURALINE brand on and in connection with the same or similar electrical goods sold by Plaintiff has resulted in lost profits and damages to Plaintiff's business.

95.     The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff and the goodwill and reputation of the DURALINE brand.

96.     The Defendant's actions will continue to cause damage to Plaintiff and confuse the public unless enjoined by this Court.

## COUNT III

### FEDERAL FALSE DESIGNATION
### OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(A)

97.     Plaintiff repeats and incorporates each and every allegation in paragraphs 1 through 96, as if fully stated herein.

98.     Plaintiff owns the federally registered trademark DURALINE ("the 635 registration) and uses the trademark DURALINE as its common law trade name and as a brand for its electrical connectors.

99.     The Defendants, without authorization from Plaintiff, have used in commerce spurious designations that are identical with, or substantially indistinguishable from Plaintiff's DURALINE trademark on the same goods manufactured and sold by Plaintiff.

100.    The Defendants' unauthorized use of Plaintiff's DURALINE trademark and trade name on and in connection with the Defendants' manufacturing and selling electrical connectors in United States commerce is likely to cause confusion or mistake in the minds of the relevant consumers, including the United States Navy and owners of shipyards.

101.    The Defendants' acts alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102.    The Defendants' conduct as alleged herein is willful and deliberately intended to mislead consumers into thinking they were purchasing and using genuine DURALINE brand electrical connectors manufactured by the Plaintiff.

103.    The Defendants' uses and sales in commerce of the infringing DURALINE branded electrical goods have resulted in lost profits and damages to Plaintiff's business which are difficult to determine.

104.    The Defendants have also, by selling infringing DURALINE branded products, caused immeasurable damage to the goodwill of the DURALINE trademark and trade name and diminished the brand recognition of the DURALINE trademarks by introducing counterfeit products into the marketplace.

105.    The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff and the goodwill and reputation of the DURALINE brand.  Moreover, it will continue to cause damage to Plaintiff and confuse the public unless enjoined by this Court.

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

106. Plaintiff repeats and incorporated by reference the allegations made in Paragraphs 1-105 above.

107. Defendants' acts as alleged herein constitute common law trademark infringement and unfair competition, under the common law of the State of Florida and have created and will continue to create, unless restrained by this Court, a likelihood of confusion of the public.

108. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DURALINE brand to the great and irreparable injury of Plaintiff.

109. As a result of Defendant's acts, Plaintiff has been damaged in an amount not yet determined or ascertainable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court find in favor of the Plaintiff and against the Defendants, jointly and severally, and other individuals, officers, and directors as may be applicable, for infringing the Plaintiff's rights in the DURALINE trademark, and for the knowing participation in the counterfeiting activities, and award Plaintiff the following relief:

1. A judgment award providing:

a. Plaintiff compensation for damages by disgorging the profits earned by each Defendant pursuant to 15 U.S.C. § 1117(a);

b. Awarding Plaintiff its actual damages, pursuant to 15 U.S.C. § 1117(a);

c. Trebling the awarded damages pursuant to 15 U.S.C. § 1117(b) in view of the egregious nature of the infringing activity;

17

d.     Statutory damages for trademark counterfeiting, pursuant to 15 U.S.C. § 117(c), including of up to $2 million per counterfeit mark per type of goods or services sold;

e.     pre and post judgment interest;

f.     requiring Defendants to pay Plaintiff's reasonable attorney fees; and

g.     requiring Defendants to pay the costs of this suit.

2.     Permanently enjoining Defendants and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

a.     The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit DURALINE products identified in the Complaint and any other unauthorized use of the mark DURALINE as a name for a product, counterfeit, copy or colorful imitation thereof;

b.     Pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

c.     For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, for all sales made in connection with use of the DURALINE brand;

d.      Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, tool and die, molds, labels, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing the DURALINE trademark; and

3.      For any other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:                                              Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiff*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
E-Service: ftlemaildesig@lewisbrisbois.com

By:/s/
        Joseph R. Englander, Esq.
        Florida Bar No.: 935565
        joseph.englander@lewisbrisbois.com

**JEFFREY H. GREGER, PC**
*Counsel for Plaintiff*
Jeffrey H. Greger, Esq.  (Pro Hac pending)
Virginia State Bar No.: 41500
5006 Kenerson Drive
Fairfax, Virginia 22032
Telephone: (571) 331-4949
E-Service: jeff@gregerpc.com

**STUDEBAKER & BRACKETT PC**
*Counsel for Plaintiff*
Thomas W. Cole, Esq. (Pro Hac pending)
Virginia State Bar No.: 21341
8255 Greensboro Dr Ste 300

19

McLean, Virginia 22102
Telephone 703 677 2169
E-Service: thomas.cole@sbpatentlaw.com